1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| American Express Company, | No. CV-18-01281-PHX-DWL |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Xiongwen Rui, et al., | |
| Defendants. | |

In April 2018, Plaintiff American Express Company ("AmEx") filed this lawsuit against a former executive, Defendant Xiongwen Rui ("Rui"), in an effort to claw back certain compensation Rui had received before quitting to work for a China-based competitor. (Doc. 1.) In November 2018, after unsuccessfully attempting to serve Rui at a home he owns in Arizona, AmEx filed an *ex parte* motion requesting permission to use "alternative service"—specifically, permission to serve Rui by emailing the complaint to his U.S.-based attorney. (Doc. 18.) In this motion, AmEx intimated that Rui lives in Arizona and stated that Rui merely "spend[s] part of his time in China" in connection with his new job. (*Id.* at 4-7.) AmEx also provided a declaration from one of its in-house attorneys, who averred that "American Express's records reflect [an Arizona address] as the last-known address for Mr. Rui." (Doc. 18-1 ¶ 6.) Based on these representations, the Court granted the *ex parte* motion and authorized service by email. (Doc. 19.) Service was completed a few days later. (Doc. 20.)

Rui[1] now moves to either dismiss the complaint for lack of sufficient service or to "set aside" the Court's earlier order authorizing alternative service. (Doc. 24.) Rui argues, among other things, that AmEx misled the Court in its *ex parte* motion by suggesting he lives in Arizona, as he and his attorney had specifically informed AmEx's in-house counsel, well before the motion was filed, that he actually lives in China. (*Id.* at 3.) In support of this contention, Rui has provided a declaration in which he states that "[i]n March 2017 . . . I had a telephone conversation with [AmEx's in-house counsel] . . . and we discussed the fact that I was living and working in China." (Doc. 24-1 at 2-3.) Rui has also provided a declaration from his attorney, who states that "[i]n October 2017 . . . I had a telephone conversation with [AmEx's in-house counsel] . . . [and] told him that Mr. Rui was working and living in China." (*Id.* at 8-9.) Accordingly, Rui argues that AmEx should have been required to attempt to serve him in China via the Hague Convention before seeking permission to use alternative service methods.

In its response, AmEx doesn't dispute the accuracy of the declarations from Rui and Rui's attorney. (Doc. 26.) Instead, AmEx simply argues that the Hague Convention isn't the exclusive means of serving a party living in a foreign country and that it's permissible to seek an order authorizing alternative service methods (such as service via email) without first making an attempt to serve through the Hague Convention. (*Id.* at 7-10.)

In his reply, Rui argues that "it is one thing to have discretion to order alternative service outside the Hague Convention and another to actually exercise that discretion in a given case." (Doc. 31 at 1.) Rui contends that Rule 4(f)(3) requires a party seeking permission to use alternative service methods to demonstrate "necessity" and that AmEx can't make such a showing here because it hasn't even tried to utilize the Hague Convention's procedures. (*Id.* at 3-7.)

The Court largely agrees with Rui and will thus vacate, in part, its November 16,

---

[1] It should be noted that the pending motion was also filed by Rui's co-defendant, his wife Jin Wu ("Wu"), who was added as a defendant in AmEx's amended complaint. (Doc. 10.) The Court's November 16, 2018 order also authorized alternative service as to Wu and she joins in Rui's challenge to that order. Because most of the arguments in the parties' briefs pertain to Rui, the Court focuses on Rui throughout much of this order. The final paragraph of this order addresses Wu.

- 2 -

2018 order authorizing alternative service and quash the service effectuated on Rui in compliance with that order. The root of the problem here is that AmEx's *ex parte* motion was misleading and omitted important details. The motion suggested that Rui still lived in Arizona and simply traveled to China from time to time for business. Among other things, it referred repeatedly to Rui's "last known" Arizona address and was accompanied by a declaration from an AmEx in-house attorney, who mentioned that he'd engaged in several conversations with Rui and Rui's attorney in 2017 but didn't provide any relevant details about those conversations. Yet Rui has now submitted uncontradicted evidence showing that, during those 2017 conversations, he and his attorney specifically told the AmEx attorney that Rui now lives in China. The Court is struggling to understand how AmEx could have thought it appropriate to omit that particular detail from its *ex parte* motion or the accompanying declaration.

This omission matters for two reasons. First, AmEx's *ex parte* motion primarily sought relief under Federal Rule of Civil Procedure 4(e). (Doc. 18 at 5-7.) That provision, however, only applies to serving individuals *within* the United States. The applicable provision governing "Serving an Individual in a Foreign Country" via alternative methods is Rule 4(f)(3), which was mentioned only in passing in AmEx's motion. (*Id.* at 7.) Notably, the proposed order that AmEx submitted with its motion (Doc. 18-8), which the Court ultimately issued (Doc. 19), only authorized service under Rule 4(e). It's therefore unclear whether AmEx's reliance on that order to serve Rui—who, again, apparently lives in China—was even valid.

Second, and more important, the decision whether to authorize alternative service under Rule 4(f)(3) is a discretionary one that turns, in part, on whether the movant has shown necessity. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (a plaintiff seeking permission to serve a foreign defendant via alternative service methods "need not have attempted every permissible means of service of process before petitioning the court for alternative relief" and "[i]nstead . . . need[] only to demonstrate that the facts and circumstances of the present case *necessitate*[] the district court's

intervention") (emphasis added). Here, the information AmEx provided in its *ex parte* motion seemed to demonstrate necessity. After all, it would have been futile to require AmEx to attempt to serve Rui in China via the Hague Convention if Rui didn't even live in China and only traveled there occasionally for business. However, now that it's been established that Rui lives in China (and that AmEx knew this at the time it filed its *ex parte* motion), the necessity calculus changes.

To be sure, the Ninth Circuit in *Rio* rejected the argument that "Rule 4(f) should be read to create a hierarchy of preferred methods of service of process." 284 F.3d at 1014. The court elaborated that "Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief'" and, instead, "is merely one means among several which enables service of process on an international defendant." *Id.* at 1015. Accordingly, the *Rio* court left it within each district court's discretion to "determin[e] when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." *Id.* at 1016; *see also In re LDK Solar Sec. Litig.*, 2008 WL 2415186, *3 (N.D. Cal. 2008) ("FRCP 4(f)(3) stands independently of FRCP 4(f)(1); it is not necessary for plaintiffs to first attempt service through 'internationally agreed means' before turning to 'any other means not prohibited by international agreement.'").

Nevertheless, even though Rule 4(f)(3) is not intended to be a "last resort," courts have required a much greater showing of necessity than what has been presented here. In *Rio*, for example, the plaintiff "presented the district court with its inability to serve an elusive international defendant, striving to evade service of process," and the Ninth Circuit emphasized that those factual circumstances showed "the district court properly exercised its discretionary powers to craft alternative means of service." 284 F.3d at 1016. Other cases authorizing alternative service under Rule 4(f)(3) have involved similar circumstances. *See, e.g.*, *In re LDK Solar Sec. Litig.*, 2008 WL 2415186 at *3 (granting motion for alternative service under Rule 4(f)(3) where "[d]efense counsel ha[d] refused to accept service on behalf of the unserved defendants" and "[a]ccording to the sworn declaration of plaintiffs' counsel, defense counsel ha[d] said that 'it might be impossible

- 4 -

to serve some of [the unserved defendants]'"); *Hydentra Hlp Int. Ltd. v. Porn69.org*, 2015 WL 8064770, *2-3 (D. Ariz. 2015) (granting motion for alternative service under Rule 4(f)(3) and allowing email service where "Plaintiff ha[d] demonstrated that it ha[d] been unable to obtain a physical address for Defendant and [was], thus, unable to serve Defendant by any other means"). In contrast, courts have denied requests for alternative service under Rule 4(f)(3) where "Plaintiffs only argue[d] that the requested alternative methods of service [were] the most efficient and effective methods of service" and "ha[d] not shown that the circumstances of this action necessitate[d] the Court's intervention." *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*, 2018 WL 1757776, *2 (S.D. Cal. 2018).

In short, courts typically authorize alternative service on a foreign defendant's domestic attorney "where the address of the foreign defendant is unknown, the foreign defendant has successfully evaded service, and/or failure to permit such service will result in unduly long delays in the litigation of a matter." *Codigo Music, LLC v. Televisa S.A. de C.V.*, 2017 WL 4346968, *10 (S.D. Fla. 2017). These factors aren't present here. Rui has agreed to provide his Chinese address and there's no evidence Rui has evaded service (AmEx's unsuccessful service attempts at Rui's former Arizona home don't demonstrate evasion, as he wasn't living there at the time of the attempts). Moreover, although this case has been pending for about a year, the delay is due in significant part to the fact that AmEx declined to make any effort to utilize the Hague Convention to effectuate service at the outset of the case, then filed a misleading motion with the Court for permission to authorize alternative service. AmEx can hardly complain about such a self-created delay.

The Court thus agrees with Rui that some relief is warranted here. The question is what form that relief should take. The first type of relief requested in Rui's motion—dismissal under Rule 12(b)(5) based on insufficient service of process—doesn't seem appropriate. Rui was, after all, served pursuant to a court order authorizing alternative service. Alternatively, Rui asks the Court to "set aside" the November 16, 2018 order authorizing alternative service. This request seems better tailored to the facts of the case. As discussed, the Court wouldn't have authorized alternative service as to Rui if all of the

relevant facts had been presented in AmEx's motion.  Thus, reconsideration of the portion of the November 16, 2018 order authorizing such service upon Rui is warranted.  *See* LRCiv 7.2(g) (reconsideration may be granted upon "a showing of new facts . . . that could not have been brought to [the Court's] attention earlier with reasonable diligence").

Finally, the Court declines to revisit the November 16, 2018 order insofar as it authorized alternative service against co-defendant Wu.  Defendants concede that Wu "maintains her domicile in Arizona" and merely note that she has made a few visits to China to see her husband.  (Doc. 24 at 2.)  It's therefore unclear why Wu contends she should have been served pursuant to Rule 4(f), given that Defendants' overall argument concerns the proper method of service "when the party to be served is a resident of a signatory nation to the Hague Convention."  (*Id.* at 14.)  Because none of the arguments in the pending motion seem to pertain to whether the alternative service methods the Court authorized were proper for serving Wu, the Court will not revisit its ruling regarding Wu.

Accordingly, **IT IS ORDERED** that:

(1) Defendants' motion to set aside the Court's November 16, 2018 order and to dismiss for deficient service (Doc. 24) is **granted in part and denied in part**;

(2) The portion of the November 16, 2018 order authorizing alternative service on Rui is **vacated**;

(3) The prior service on Rui, effectuated in compliance with the Court's November 16, 2018 order, is **quashed**;

(4) Within **90 days** of the date of this order (which deadline AmEx may seek to extend, upon motion, for good cause), AmEx must serve Rui with the summons and amended complaint in compliance with Rule 4(f)(1) and file proof of service with the Clerk of Court pursuant to Rule 4(l)(2)(A); and

(5) Wu has been properly served and must respond to the amended complaint.

Dated this 25th day of April, 2019.

Dominic W. Lanza
United States District Judge