**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Express Company, | No. CV-18-01281-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Xiongwen Rui and Jin Wu, | |
| Defendants. | |

Pending before the Court is Defendants Xiongwen Rui and Jin Wu's (collectively, "Defendants") motion for leave to file a second amended answer ("SAA"). (Doc. 53.) Plaintiff American Express Company ("American Express") opposes the motion. (Docs. 56, 60.) For the following reasons, the motion will be granted.

## BACKGROUND

Rui is a former American Express executive who resigned in February 2017 to work for Ant Financial Services Group ("Ant Financial"), a China-based financial services company. (Doc. 10 ¶¶ 19-20.) In this breach-of-contract action, American Express is seeking to claw back over $1 million of Rui's pre-resignation compensation. (*Id.* ¶ 23.) American Express's theory is that Rui breached the "Detrimental Conduct" provision in a contract (the "Agreement") he signed in June 2004, which prohibited him from working for "any Competitor" for "a one year period after [his] last day of active employment." (*Id.* ¶¶ 13, 17. *See also* Doc. 10-1 at 3-4 ¶ 2.)

On April 25, 2018—more than a year after Rui's resignation—American Express

1    initiated this action by filing a complaint.  (Doc. 1.)

2         On August 27, 2018, American Express filed a first amended complaint ("FAC"),

3    that added Rui's wife, Wu, as a defendant.  (Doc. 10.)

4         On November 15, 2019, Defendants filed an answer to the FAC.  (Doc. 43.)

5         On December 6, 2019, Defendants filed an amended answer to the FAC.  (Doc. 46.)

6         On December 18, 2019, the Court entered a Rule 16 scheduling order that

7    established January 16, 2020 as the deadline for amending the pleadings.  (Doc. 52 ¶ 2.)

8         On January 16, 2020, Defendants filed the pending motion for leave to file an SAA.

9    (Doc. 53.)  The proposed SAA seeks to raise various additional affirmative defenses.  (*Id.*

10   at 9-10.)

11         On January 30, 2020, American Express filed a response.  (Doc. 56.)

12         On February 6, 2020, Defendants filed a reply.  (Doc. 57.)

13         On February 19, 2020, American Express filed a motion for leave to file a sur-reply

14    (Doc. 58), which the Court granted (Doc. 59).

15         On February 25, 2020, American Express filed its sur-reply.  (Doc. 60.)

16                   **DISCUSSION**

17   I.    <u>Legal Standard</u>

18         Because Defendants' motion for leave to amend was filed before the expiration of

19    the amendment deadline set forth in the scheduling order, it is governed by Rule 15(a)(2)

20    of the Federal Rules of Civil Procedure.  "Rule 15 advises the court that 'leave [to amend]

21    shall be freely given when justice so requires.'"  *Eminence Capital, LLC v. Aspeon, Inc.*,

22    316 F.3d 1048, 1051 (9th Cir. 2003).  "This policy is 'to be applied with extreme

23    liberality.'"  *Id.*  Nevertheless, "a district court need not grant leave to amend where the

24    amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an

25    undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*,

26    465 F.3d 946, 951 (9th Cir. 2006).  Of these factors, "it is the consideration of prejudice to

27    the opposing party that carries the greatest weight."  *Eminence Capital*, 316 F.3d at 1052.

28    Put differently, "[p]rejudice is the touchstone of the inquiry under rule 15(a)."  *Id.* (internal

1    quotation omitted).

2    American Express opposes Defendants' amendment request solely on futility

3    grounds.  (Doc. 56 at 15.)  A proposed "amendment is futile when no set of facts can be

4    proved . . . that would constitute a valid and sufficient claim."  *Missouri ex rel. Koster v.*

5    *Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quotation omitted).  When assessing futility,

6    "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate

7    decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203

8    F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).  The party opposing

9    amendment bears the burden of proving futility.  *Rodriguez v. City of Phoenix*, 2014 WL

10   1053602, *3 (D. Ariz. 2014).

11   II.    Paragraph 10 (Statute of Limitations)

12   In paragraph 10 of the proposed SAA, Defendants seek to add a statute-of-

13   limitations defense—specifically, that A.R.S § 12-541(3), which provides a one-year

14   limitation period, bars American Express's claim.  (Doc. 53 at 10.)  American Express

15   argues this amendment would be futile because (1) the parties' contract contains a choice-

16   of-law provision requiring the application of New York law, which provides for a six-year

17   statute of limitations for breach-of-contract claims, and (2) alternatively, even if Arizona

18   law applies, the statute of limitations isn't supplied by A.R.S. § 12-541(3), which governs

19   actions for breach of an *employment* contract, but A.R.S. § 12-548, which governs actions

20   for breach of a *contractual debt* obligation (and which, like New York law, provides for a

21   six-year limitations period).  (Doc. 56 at 3-9.)

22   American Express's futility arguments are unavailing.  First, although American

23   Express argues at great length why the Restatement (Second) of Conflict of Laws requires

24   the Court to follow the choice-of-law provision in the parties' contract, which calls for the

25   application of New York law (Doc. 56 at 4-9; Doc. 60 at 1-3), this outcome would not

26   inexorably lead to the conclusion that New York's six-year statute of limitations applies.

27   This is because the choice-of-law provision in the parties' contract is silent as to whether

28   it encompasses the statute of limitations.  (Doc. 10-1 at 8 ¶ 7 ["This Agreement shall be

- 3 -

1    governed by and construed and enforced in accordance with the laws of the State of New

2    York without reference to principles of conflicts of laws."].)    Such silence might be

3    irrelevant under the laws of some states.  *Cf. Maricopa County v. Office Depot Inc.*, 2020

4    WL 134862, *10 (D. Ariz. 2020) (concluding that general California choice-of-law

5    provision required application of California's statute of limitations because "the rule in

6    California is that 'a standard choice-of-law provision (which states that a contract shall be

7    governed by the 'laws' of a particular jurisdiction) incorporates the statutes of limitations

8    of the chosen state'") (citation omitted).  However, "New York law . . . does not consider

9    the election of New York law to include an election of New York's statutes of limitations

10   unless the parties explicitly indicate such a choice."  *Myers Indus., Inc. v. Schoeller Arca*

11   *Sys., Inc.*, 171 F. Supp. 3d 107, 115 (S.D.N.Y. 2016).  *See also Mortgage Resolution*

12   *Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2019 WL 4735387, *6 (S.D.N.Y. 2019)

13   ("[T]he election of New York law in the [contract] does not include an election of New

14   York's statutes of limitations unless the parties explicitly indicate such a choice.")

15   (citations and internal quotation marks omitted); *2138747 Ontario, Inc. v. Samsung C & T*

16   *Corp.*, 103 N.E.3d 774, 777 (N.Y. 2018) ("Contractual choice of law provisions typically

17   apply to only substantive issues . . . and statutes of limitations are considered procedural

18   because they are deemed as pertaining to the remedy rather than the right.") (citations,

19   brackets, and internal quotation marks omitted).  Thus, American Express has not met its

20   burden of establishing that Defendants' proposed statute-of-limitations defense is futile due

21   to the choice-of-law provision within the Agreement.[1]

22       Second, American Express also has not shown that, to the extent Arizona law

23   provides the statute of limitations, the six-year limitation period prescribed by A.R.S. § 12-

24   548 would necessarily apply.  Rui's position is that the applicable Arizona statute is A.R.S.

25   § 12-541(3), which provides that an action for "breach of an oral or written employment

---

26   [1]      To be clear, this ruling does not foreclose American Express from raising other
     statute-of-limitations arguments during future stages of this case.  The Court's holding is a
27   narrow one—because American Express's motion was predicated on the assumption that
     the New York choice-of-law provision in the Agreement necessarily incorporates New
28   York's statutes of limitations, and that assumption is inaccurate, American Express has not
     met its burden under Rule 15(a)(2) of proving futility.

1  contract" "shall be commenced . . . within one year after the cause of action accrues."

2  A.R.S. § 12-541(3).  Although the term "employment contract" is not defined by § 12-

3  541(3), the Arizona Court of Appeals has instructed courts to give that term its ordinary

4  meaning—a "contract between an employer and employee in which the terms and

5  conditions of employment are stated."  *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi,*

6  *P.C.*, 183 P.3d 544, 546 (Ariz. Ct. App. 2008) (citation omitted).  This encompasses "all

7  contracts defining specific responsibilities of the employer to the employee," meaning any

8  agreement related to "the nature, conditions, or duration" of employment.  *Id.* at 548-49.

9      American Express contends that A.R.S. § 12-541(3) is inapplicable here because it

10  only governs claims brought by an employee against an employer, but not vice versa.  (Doc.

11  56 at 4.)  This argument lacks merit.  Although it is true that most of the cases construing

12  § 12-541(3) happened to involve claims asserted by employees, the plain language of the

13  statute doesn't support the one-sided interpretation proposed by American Express—it

14  applies to any "actions" for "breach of an oral or written employment contract,"

15  irrespective of the identity of the plaintiff.

16      Alternatively, American Express contends that, even if there is some "question" or

17  "doubt" as to the applicability of A.R.S. § 12-541(3), the six-year limitation period

18  prescribed by A.R.S. § 12-548 will ultimately be deemed applicable because Arizona

19  courts follow a "general" rule of applying the statute with the longer limitation period when

20  faced with such a conflict.  (Doc. 56 at 4.)  The difficulty with this argument is that it is not

21  apparent why this lawsuit should be categorized as a debt-collection action instead of a

22  breach-of-employment-contract action.  Although the Agreement does authorize American

23  Express to recover certain incentives it paid to Rui, the existence of this "debt" is contingent

24  upon a showing that Rui breached the responsibilities he owed to American Express under

25  the Agreement.  American Express has not identified any case holding that A.R.S. § 12-

26  548, rather than A.R.S. § 12-541(3), applies in this scenario.  Accordingly, American

27  Express has not met its burden of showing that Defendants' affirmative defense based on

28

1   A.R.S. § 12-541(3) is futile.[2]

2   III.   Paragraph 5 (Lack of Consideration And Statute Of Frauds)

3        As noted, American Express accuses Rui of breaching a provision within the

4   Agreement that prohibited him from working for "any Competitor" for one year.  (Doc.

5   10-1 at 3 ¶ 2(a) ["For a one year period after your last day of active employment . . . you

6   shall not be employed by, provide advice or act as a consultant for any Competitor."].)

7   Included as an attachment to the Agreement was a "Competitor List" that identified, by

8   name, various companies at which future employment was forbidden.  (*Id.* ["The Company

9   has defined Competitor . . . by name as set forth in the attached Competitor List."].)

10  Notably, the Agreement also granted American Express the unilateral right to modify the

11  "Competitor List" in the future.  (*Id.* ["The Company can revise the Competitor List at its

12  discretion at any time and from time to time and as revised will become part of this

13  Agreement; a copy of the current Competitor List will be available through the Corporate

14  Secretary's Office."].)

15       In the current version of the answer, Defendants assert that Ant Financial wasn't

16  identified on the Competitor List at the time Rui signed the Agreement and that American

17  Express subsequently added Ant Financial to the list without Rui's knowledge.  (Doc. 46

18  at 4-5 ¶¶ 3-5.)  Based on these allegations, the current version of the answer asserts, *inter*

19  *alia*, that the presence of the unilateral-modification clause rendered the Agreement an

20  "unenforceable, illusory contract," that "there was no . . . meeting of the minds, as required

21  for an enforceable contract," and that American Express's decision to subsequently add

22  Ant Financial to the Competitor List violated the covenant of good faith and fair dealing.

23  (*Id.*)

24       In paragraph 5 of the proposed SAA, Defendants seek to assert two additional

25  reasons why the addition of Ant Financial to the Competitor List was invalid: (1) "[t]here

26  was no consideration to support American Express' purported unilateral amendment to the

27

28  [2]     Once again, this limited ruling does not foreclose American Express from further developing and presenting arguments concerning A.R.S. § 12-548 during future stages of this case.

[Agreement] by adding Ant Financial to the Competitor List"; and (2) "[s]uch a unilateral amendment, unsigned by Rui, would also violate the statute of frauds as the obligations under the [Agreement] cannot be completed within a year."  (Doc. 53 at 9 ¶ 5.)  American Express opposes this request, arguing that both theories are futile.  (Doc. 56 at 9-12.)

### A.     Lack Of Consideration

American Express first contends that, because Rui expressly agreed in the Agreement that it could revise the Competitor List, its subsequent addition of Ant Financial to the list didn't constitute a contract modification and didn't require any additional consideration.  (Doc. 56 at 10.)  Defendants do not meaningfully address this argument in their response—their conclusory assertion that "there was no . . . consideration to support modifying a material term of the alleged agreement" (Doc. 57 at 8) begs the question of whether this was, in fact, a contract modification.  Additionally, Defendants' reliance on *May v. Wilcox*, 182 A.D.2d 939 (N.Y. App. 1992), is misplaced because the contract in that case did not include a clause expressly granting one party the right to make future revisions.

Although American Express's argument has some force, it has not cited any Arizona or New York cases holding that consideration isn't required in this scenario.  Given Rule 15(a)(2)'s liberal policy in favor of amendment, coupled with the fact that the current version of Defendants' answer already identifies several reasons why American Express's addition of Ant Financial to the Competitor List should be deemed legally invalid (meaning the proposed amendment would simply add another legal theory in support of an existing defense), the Court concludes that American Express hasn't met its burden of proving futility as to its argument that the addition of Ant Financial wasn't a modification.

American Express next argues that, even if the addition of Ant Financial to the Competitor List could be considered a contract modification, the modification was supported by adequate consideration because "Rui received consideration not only at the time of signing, but also through the rest of his employment, in the form of substantial compensation."  (Doc. 56 at 10.)  However, American Express again does not cite any

Arizona or New York cases holding that such consideration would be adequate to support a contract modification and the Court's limited research suggests that, at least under Arizona law, it may be insufficient. *Demasse v. ITT Corp.*, 984 P.2d 1138, 1145 (Ariz. 1999) ("Separate consideration, beyond continued employment, is necessary to effect a modification."). American Express may, at a future stage of this case, be able to present additional argument and citations supporting its position, but on this record it has not established futility based on the adequacy of the consideration it allegedly provided for the modification.

American Express's final argument is that, because New York courts routinely uphold "broader forward-looking" non-compete agreements that don't specifically identify a list of covered competitors, "American Express's more narrow (and specific) Competitor List, which was readily available to Rui to view at any time," must be enforceable, too. (Doc. 56 at 11.) This argument fails to establish futility for Rule 15(a)(2) purposes because it conflates the ultimate issue of enforceability with the narrow defense raised by Defendants' proposed amendment—whether there was sufficient consideration to support a contract modification.

## B. Statute Of Frauds

American Express only touches upon Defendants' proposed statute-of-frauds defense in passing—it contends that "neither the New York nor Arizona statute of frauds applies for the simple reason that the parties' contract was in writing." (Doc. 56 at 10.) Additionally, in a footnote, it contends that "[t]he statute of frauds is also inapplicable because the Agreement *could have* been performed within a year." (*Id.* at 10 n.6.)

These arguments fail to establish futility. "Under Arizona law, contracts which are not to be performed within one year from the making of the contract must be in writing." *Western Chance No. 2, Inc. v. KFC Corp.*, 957 F.2d 1538, 1541 (9th Cir. 1992). Additionally, the writing must be "signed by the party to be charged." A.R.S. § 44-101. New York law similarly provides that agreements "not to be performed within one year from the making thereof" must "be in writing, and subscribed by the party to be charged

therewith."  N.Y. Gen. Oblig. Law § 5-701(a)(1).

Here, the Agreement restricts the companies for which Rui may work for "a one year period after [his] last day of active employment."  (Doc. 10-1 at 3.)  This is not, as American Express suggests, an obligation Rui could have fulfilled in less than a year—had Rui started working for a Competitor on the 364th day after his resignation, he would have been in violation.  Accordingly, the statute of frauds is potentially applicable.  *Best v. Edwards*, 176 P.3d 695, 698 (Ariz. Ct. App. 2008) ("[T]he modification of a material term of an agreement, which was required by the statute of frauds to be in writing, must also be in writing.").

IV.    Paragraph 6 (Arbitrariness, No Meeting Of The Minds, And Lack Of Damages)

The final paragraph of the SAA in which Defendants seek to add new affirmative defenses is paragraph 6, which states: "On information and belief, American Express did not include Ant Financial in other, more recent versions of the Competitor List.  American Express' removal of Ant Financial from other versions of the Competitor List confirms that American Express' inclusion of Ant Financial on the Competitor List was arbitrary, there was no meeting of the minds between the parties, and American Express has not been damaged by Rui's alleged violations of the Clawback Agreement."  (Doc. 53 at 9.)

American Express does not, in its response, parse the three different theories (*i.e.,* ambiguity, no meeting of minds, no damages) that appear in paragraph 6 or attempt to explain why each is individually futile.  (Doc. 56 at 11-12.)  Instead, American Express broadly dismisses as "irrelevant" whether it has now removed Ant Financial from the Competitor List—in its view, all that matters is that Ant Financial was on the list when Rui started working there.  (*Id.*)  Further complicating matters, Defendants do not focus on paragraph 6 at all in their reply.

This is an unsatisfying record on which to make any judgments about the futility of paragraph 6.  Ultimately, American Express bears the burden of proving futility, and on this record it has not met that burden as to paragraph 6.  Defendants' claims about ambiguity, no meeting of the minds, and a lack of damages may very well end up proving

unmeritorious, but they will not be stricken at the pleading stage.[3]

V.      Paragraph 8 (Waiver, Estoppel, And Laches)

In the final portion of its response, American Express argues that Defendants should be precluded from asserting the affirmative defenses of waiver, estoppel, and laches, which appear in paragraph 8 of the SAA.  (Doc. 56 at 12-15.)  This argument fails for the simple reason that Defendants are not seeking leave to *add* these defenses for the first time—they already appear in the current version of the answer.  (Doc. 46 at 5 ¶ 6.)

Accordingly, **IT IS ORDERED** that Defendants' motion for leave to file a second amended answer (Doc. 53) is **granted**.  Defendants must, within 14 days of this Order, file and serve the SAA.

Dated this 12th day of May, 2020.

Dominic W. Lanza
United States District Judge

---

[3]      Also, Defendants' no-meeting-of-the-minds allegation is not new—it also appears in the current version of the answer.  (Doc. 46 at 5 ¶ 4.)  Thus, it would remain part of the case even if the motion to amend were denied.